1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NICHOLS KASTER, LLP
Matthew C. Helland, CA State Bar No. 250451
Helland@nka.com
Jodi L. Collova, CA State Bar No. 261505
Collova@nka.com
One Embarcadero Center, Suite 720
San Francisco, CA  94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

Attorneys for Individual and Representative Plaintiffs

Additional Attorneys on the Following Page

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brett McHorney and Jordan Mayer, individually, on behalf of others similarly situated, and on behalf of the general public, <br><br> Plaintiffs, <br><br> v. <br><br> GameStop Corp., GameStop, Inc., and DOES 1-10 inclusive, <br><br> Defendants. | Case No. CV 09-02879 GHK (MAN) <br><br> **DECLARATION OF MATTHEW C. HELLAND IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** <br><br> Honorable George H. King <br> Date:        October 18, 2010 <br> Time:        9:30 a.m. <br> Courtroom: 650 <br> Judge:       Hon. George H. King |

**DECLARATION OF MATTHEW C. HELLAND**

1  ERVIN, COHEN & JESSUP LLP
   Eric W. Cheung, CA State Bar No. 235008
2  echeung@ecjlaw.com
3  9401 Wilshire Blvd, 9th Floor
   Beverly Hills, CA  90212
4  Telephone: (310) 281-6392
5  Facsimile: (310) 887-6874

6  NICHOLS KASTER, PLLP
7  Paul J. Lukas, MN State Bar No. #22084X
   lukas@nka.com
8  (admitted pro hac vice)
9  E.  Michelle Drake, MN State Bar No. #0387366
   drake@nka.com
10 (admitted pro hac vice)
11 4600 IDS Center
   80 South 8th Street
12 Minneapolis, MN  55402
13 Telephone: (612) 256-3200
   Facsimile: (612) 338-4878
14
15 Attorneys for Individual and Representative Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**DECLARATION OF MATTHEW C. HELLAND**

1.     My name is Matthew C. Helland.  I am an attorney with the law firm of Nichols Kaster and am counsel of record in this action.  I make this declaration based on my own personal knowledge.

2.     Attached hereto as Exhibit 1 is a true and correct copy of the Joint Stipulation of Settlement and Release and Addendum to Joint Stipulation of Settlement and Release.

3.     Prior to and during settlement negotiations in this matter, Defendants provided Plaintiffs with documents we believed would have been central to this litigation, including policy manuals and other important documents.  Defendants provided expense reimbursement policies that were in effect over the Class Period.  While we believe these policies were not in place at the store level, they did provide for reimbursement of mileage.  Defendants also provided copies of the store to store transfer policies, while outline the method by which Defendants' inventory is to be transferred from one store to another.

4.     In addition to documents, Defendants provided Plaintiffs with data we requested.  GameStop provided a spreadsheet setting forth the distance between each California store and the bank that store used.  We analyzed that data and determined that the average distance between a GameStop store and the bank was 0.5 miles.  For the purposes of settlement discussions, the Parties agreed that stores located 0.2 miles or less to the bank would be considered "walking distance" from the bank, such that the use of a vehicle would not be necessary to make bank drops at almost half of the GameStop stores in California.

5.     Defendants provided information regarding store to store transfers from a sample set of stores.  The information provided included data obtained from UPS.  These electronic data logs identify the store from which the inventory transfer originated, the store which received the transferred inventory, the date of the inventory transfer, and the "tracking number" for the transfer.  Based on the tracking number, we identified the manner in which the transfer occurred, either via

**DECLARATION OF MATTHEW C. HELLAND**

1  UPS or via a "hand carry" which involved a GameStop employee using his or her

2  personal vehicle to transfer the inventory.  We analyzed these transfer logs to

3  isolate the transfers which took place via UPS, and which transfers took place by

4  hand carry.  As reflected in these logs, the vast majority of store-to-store transfers

5  appeared to be performed by UPS, as opposed to by hand carry.  The small

6  percentage of inventory transfers performed by hand carries were recorded on the

7  transfer logs, because all inventory transfers – whether by UPS or by hand carry –

8  were apparently required to be recorded for inventory purposes.

9       6.     After isolating the hand carries, we determined the distance between

10  each store for each store-to-store transfer.  This analysis was performed by using

11  data provided by GameStop about each store's location and by calculating the

12  distance between stores.  This analysis showed that the average distance traveled

13  for store-to-store hand carries was approximately 18.86 miles round trip per hand

14  carry.  The number of hand carries on the logs reflect that a hand-carry transfer

15  occurred, on average, 0.65 times per week, per store (just slightly more than one

16  every two weeks).

17       7.     In addition to reviewing documents and data from Defendants, we

18  interviewed putative class members from around the state of California.  We asked

19  putative class members about their experiences driving personal vehicles for

20  Defendants.  Based on our interviews, there is anecdotal evidence to suggest that

21  the number of store to store transfers at the sample data stores was greater than in

22  the rest of California.  We also asked putative class members about the distances

23  they drove for offsite meetings.  While some putative class members reported

24  driving as much as 80 miles round trip, many putative class members reported

25  driving much less.

26       8.     In addition to exchanging data and documents, Counsel for both

27  parties discussed the facts of the case on numerous occasions.  Early in the case,

28  Paul Lukas, of Nichols Kaster, flew to Philadelphia to meet with Defense Counsel

**DECLARATION OF MATTHEW C. HELLAND**

1    and a representative from GameStop.  Throughout the settlement negotiations, we

2    held numerous telephone conferences with Defendants to discuss the merits of the

3    case and investigate the facts of the case.

4          9.     On January 5, 2010, the parties mediated this case with Michael

5    Dickstein, in New York.  The mediation lasted more than 12 hours, continuing late

6    into the evening, but it did not result in a settlement.  After many follow-up

7    discussions between the parties and with Mr. Dickstein, the parties finally reached

8    agreement on a settlement.

9          10.    The law firm of Nichols Kaster ("NKA") has two offices; one in San

10    Francisco, California and one in Minneapolis, Minnesota.  The firm currently has

11    24 lawyers, all of whom practice in the limited realm of employment law.  The

12    firm's history dates back to 1974, when Donald H. Nichols opened his own law

13    practice.  The firm has been practicing employment law for 25 years, and has

14    represented employees almost exclusively for the past 15 years.  Since the year

15    2000, a substantial portion of the firm's practice has been the representation of

16    employees in class and collective action litigation.  The firm has represented over

17    100,000 employees in class and collective actions.  The firm is currently counsel of

18    record in over 75 class or collective actions nationwide.  A vast majority of these

19    are wage and hour cases.

20          11.    Paul J. Lukas has been with NKA for almost 20 years as a clerk,

21    associate, and now a partner.  He is licensed to practice law in Minnesota and New

22    York.  He has tried over 50 cases to verdict or judgment.  Mr. Lukas has been

23    recognized by his peers as one of the "Top 40 Employment Law Lawyers" in

24    Minnesota and is consistently named a "Super Lawyer." Since the year 2000, Mr.

25    Lukas has concentrated his practice on representing employees in class and

26    collective actions.  Mr. Lukas is a frequent nationwide lecturer on various topics,

27    including litigating class and collective actions and complex wage and hour cases.

28

**DECLARATION OF MATTHEW C. HELLAND**

12.     E. Michelle Drake is an Associate Attorney at Nichols Kaster. She graduated from Harvard Law School in 2001. After graduating from Harvard, she was a public defender in Atlanta, Georgia. As a public defender, she tried several jury trials, including several murder cases. She subsequently became the youngest lawyer to join the Office of the Georgia Capital Defender where she exclusively defended death penalty cases in Georgia's trial courts. In 2007 she joined Nichols Kaster and since then her practice has focused almost exclusively on the representation of employees in individual and class litigation.

13.     I am licensed to practice law in Minnesota and California. I began working with NKA in the fall of 2005. My current case load consists almost exclusively of class and collective actions brought on behalf of employees.

14.     Brett McHorney and Jordan Mayer provided substantial assistance in prosecuting this case. I met with Mr. McHorney in person prior to filing the case. Both Mr. McHorney and Mr. Mayer reviewed the complaint prior to filing. They promptly returned phone calls from counsel and provided substantial information during the informal discovery and negotiation period. My firm spoke to each of them more than ten times throughout the course of the litigation. McHorney and Mayer are both very knowledgeable regarding Defendants' employment practices and were able to refute some arguments Defendants made during the negotiation process. For example, they provided my firm with information regarding the nature of the job duties, the frequency and length of the trips they made in their personal vehicles, the frequency and length of the trips other employees made in their personal vehicles, and Defendants' reimbursement policies and practices.

15.     At several key points in the negotiations leading to this settlement, Defense Counsel raised several potential factual and substantive defenses. These defenses, if unexamined and unchallenged, may have significantly changed our negotiating position. However, upon receiving representations from Defense Counsel about the nature of various policies, we would call McHorney and Mayer

**DECLARATION OF MATTHEW C. HELLAND**

1   to ask for their perspective.  Often, McHorney and Mayer provided my firm with
2   information that refined our understandings of Defendants' factual assertions.  The
3   information provided by Plaintiffs was critical in settling this case.  In my opinion,
4   the quick and reliable access to facts from McHorney and Mayer enhanced my
5   firm's credibility in the negotiations and led to a greater settlement value from
6   Defendants.

7          16.    Defense Counsel has informed me that there are approximately 5,500
8   class members who spent at least part of their tenure with Defendants in a Tier 1
9   position.  Defense Counsel has informed me that these employees worked 475,000
10  work weeks through February 2010.

11         17.    Defense Counsel has informed me that there are approximately 17,000
12  class members who spent at least part of their tenure with Defendants in a Tier 2
13  position.  Defense Counsel has informed me that these employees worked
14  approximately 480,000 workweeks through February 2010.

15         18.    As of the date of this declaration, my firm has spent over $100,000 in
16  time on this matter.

17         19.    The parties have selected Rust Consulting as the settlement
18  administrator.  Prior to selecting Rust Consulting we received bids from other
19  settlement administration companies.  Attached hereto as Exhibit 2 is a true and
20  correct copy of Rust's proposal.

21
22  I declare under penalty of perjury that the foregoing is true and correct.
23
24  Dated: September 16, 2010                    s/ Matthew C. Helland
25                                              Matthew C. Helland
26
27
28

**DECLARATION OF MATTHEW C. HELLAND**